# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| SPUME.IO LTD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 9:22-cv-81534 |
| | ) | |
| ATLANTIC INTERNATIONAL CAPITAL LLC, d/b/a AIC DIGITAL ASSETS GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER OF DEFENDANT ATLANTIC INTERNATIONAL CAPITAL d/b/a AIC DIGITAL ASSETS GROUP

Defendant Atlantic International Capital d/b/a AIC Digital Assets Group ("AIC" or "Defendant") responds to Plaintiff Spume.IO Ltd.'s ("Spume" or "Plaintiff") Complaint by denying each and every allegation not specifically admitted herein and by further responding as follows:

### SPUME'S PRELIMINARY STATEMENT

1. AIC admits only that the Plaintiff has filed a Complaint asserting a cause of action for breach of contract. AIC denies that it breached any contract with the plaintiff and asserts a counterclaim that the plaintiff breached the relevant contract. AIC denies the remainder of the allegations contained in Paragraph 1 of the Complaint.

2. AIC admits only that the language quoted appears on AIC's website and otherwise denies the remainder of the allegations contained in Paragraph 2 of the Complaint.

3. AIC denies the allegations contained in Paragraph 3 of the Complaint.

4. AIC avers that the contract between AIC and Spume provides: "This Letter Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between AIC and the Company [Spume] . . . " and otherwise denies the allegations contained in Paragraph 4 of the Complaint.

5. AIC denies that Spume paid AIC $1,450,000 to onboard Spume on the Deltec Bank and Trust ("Deltec") or Delchain Limited ("Delchain") platforms. AIC lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations contained in Paragraph 5 of the Complaint and, therefore, denies same.

6. AIC denies the allegations contained in Paragraph 6 of the Complaint.

7. AIC denies the allegations contained in Paragraph 7 of the Complaint

8. AIC denies the allegations contained in Paragraph 8 of the Complaint.

9. AIC denies the allegations contained in Paragraph 9 of the Complaint.

## JURISDICTION

10. AIC admits that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

## VENUE

11. AIC admits that venue is proper in this district under 28 U.S.C. § 1391(b)(1).

## PARTIES

12. AIC lacks knowledge or information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 12 and, therefore, denies the same.

13. AIC admits the allegations contained in Paragraph 13 of the Complaint.

## SPUME'S ALLEGED FACTS

14. AIC lacks knowledge or information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 14 of the Complaint.

15. AIC lacks knowledge or information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 15, including its footnote, and therefore denies the same.

16. AIC admits only that the language quoted in Paragraph 16 appears on AIC's website and otherwise denies the remainder of the allegations contained in paragraph 16 of the Complaint.

17. AIC denies the allegations contained in Paragraph 17 of the Complaint and avers that the contract between AIC and Spume provides: "This Letter Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between AIC and the Company [Spume] . . . "

18. AIC denies the allegations contained in Paragraph 18 of the Complaint and avers that the contract between AIC and Spume provides: "This Letter Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between AIC and the Company [Spume] . . . "

19. AIC admits only that Spume and AIC entered into a contract in June 2022.  AIC respectfully refers the Court to that contract and the list of services under it and otherwise denies the remainder of the allegations contained in Paragraph 19 of the Complaint

20. AIC admits only that Section 1 of the contract between AIC and Spume contains the quoted language contained in Paragraph 20, among additional language, and respectfully refers the Court to that contract for its terms. AIC denies the remainder of the allegations contained in Paragraph 20 of the Complaint.

21. AIC denies the allegations contained in Paragraph 21 of the Complaint, and avers that Section 2 of the contract between AIC and Spume provides, in part, "We agree to provide the following services for the Company on behalf of Spume.io . . . Expedited Onboarding with both Deltec Bank and Delchain for fiat and crypto banking services, waving of standard deposit requirements (4-6 week process)," Section 3 of the contract provides, "You [Spume] agree to cooperate fully with us in our performance of our services," and Section 6 provides, "**Best Efforts Advisor.** It is understood that AIC's involvement in the Transaction is strictly on a best efforts basis for consummation of any Transaction."

22. AIC lacks knowledge or information sufficient to form a belief as to the truth or the falsity of the allegations in Paragraph 22 concerning Spume's beliefs and, therefore, denies the same. AIC denies the remainder of the allegations contained in Paragraph 22 of the Complaint.

23. AIC denies the allegations contained in Paragraph 23 of the Complaint.

24. AIC denies the allegations contained in Paragraph 24 of the Complaint

25. AIC denies the allegations contained in Paragraph 25 of the Complaint.

26. AIC denies the allegations contained in Paragraph 26 of the Complaint.

**SPUME'S COUNT ONE – ALLEGING BREACH OF CONTRACT**

27. AIC repeats and incorporates by reference its responses to the allegations contained in Paragraphs 1 through 26 as set forth above.

28. AIC admits the allegations contained in Paragraph 28 of the Complaint.

29. AIC denies the allegations contained in Paragraph 29 of the Complaint.

30. AIC denies the allegations contained in Paragraph 30 of the Complaint.

31. AIC denies the allegations contained in Paragraph 31 of the Complaint.

32. AIC denies the allegations contained in Paragraph 32 of the Complaint.

33. AIC denies the allegations contained in Paragraph 33 of the Complaint.

34. AIC denies each and every allegation of the Complaint not specifically admitted herein.

## SPUME'S PRAYER FOR RELIEF

AIC denies that Plaintiff is entitled to any of the relief requested in the "WHEREFORE" paragraph and/or each or any of its subparagraphs (a) through (d).

## DEFENSES & AFFIRMATIVE DEFENSES

1. Plaintiff fails to state a claim upon which relief may be granted because, among other things, Plaintiff failed to adequately allege facts supporting any alleged breach of a contract by AIC.

2. Plaintiff has not sustained any damages because AIC did not breach the contract and, in fact, Plaintiff received a benefit as a result of AIC's performance.

3. The Complaint is barred, in whole or in part, by the doctrine of estoppel and waiver because (i) Plaintiff represented to AIC that it received a substantial capital investment prior to the

contract's execution and AIC relied on that representation to its detriment, and (ii) Plaintiff waived any contractual right to a guaranteed result by engaging AIC on a best efforts basis.

4. Plaintiff's claim is barred by the doctrine of unclean hands because Plaintiff engaged in inequitable behavior in the performance of its obligations under the Agreement.

5. Plaintiff is barred from relief because, to the extent it has suffered any harm or damages, such harm or damages was the result of its own conduct or the conduct of persons or entities other than AIC.

6. Plaintiff failed to mitigate its damages, if any, in whole or in part.

7. Plaintiff's breach of contract claim is barred because Plaintiff breached the Agreement first by failing to fulfill its payment obligations.

8. Plaintiff is barred from relief because AIC substantially performed under the contract.

9. Plaintiff is barred from relief because Plaintiff failed to disclose material information regarding the subject matter of the contract.

10. Plaintiff's breach of contract claim is barred by the statute of frauds.

11. Plaintiff is barred from relief because Plaintiff seeks damages that are too speculative or cannot be established with reasonable certainty.

AIC reserves the right to assert additional affirmative defenses.

WHEREFORE, AIC respectfully requests that Plaintiff's Complaint be dismissed with prejudice and that the Court grant AIC such other and further relief as it deems just and appropriate under the circumstances.

## COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13, Defendant and Counter-Plaintiff Atlantic International Capital, LLC d/b/a AIC Digital Assets Group ("AIC") hereby brings the following counterclaims against Plaintiff and Counter-Defendant Spume.IO Ltd. ("Spume"):

## PARTIES

1. Atlantic International Capital, LLC d/b/a AIC Digital Assets Group is a limited liability company organized under the laws of Florida with a principal business address of 980 N. Federal Highway, Suite 402, Boca Raton, Florida, 33432.

2. Upon information and belief, Spume.IO, Ltd. is a limited liability company organized under the laws of the British Virgin Islands with a principal place of business in Tortola, British Virgin Islands.

## FACTUAL BACKGROUND

3. AIC is a company that offers several cryptocurrency and digital asset solutions to clients.

4. AIC has developed specialties including, but not limited to, digital financial investment guidance for clients and assisting clients secure "tier one" cryptocurrency exchange listings.

5. Over the years, AIC has developed strong relationships with regulated financial services institutions and tier one cryptocurrency exchanges.

6. AIC maintains important working relationships with multiple banking and financial advisory firms and multiple cryptocurrency exchanges.

7. AIC's professional reputation relies on its ability to present credible business opportunities to its network of industry peers.

7

8. Spume purports to be "the first fully decentralized, community owned NFT marketplace on Ethereum, Polkadot, and the Binance smart chain."

9. Spume represented to AIC that in March 2022 it secured $2.5 million in funding from Multicoin Capital (the "Multicoin Investment"), an investment firm that focuses heavily on digital currency.

10. Upon information and belief, Multicoin never invested in Spume.

11. Upon information and belief, Spume falsified documents purporting to evidence the Multicoin Investment.

12. Spume never informed AIC that it had falsified an investment contract with Multicoin Capital.

13. If Spume had informed AIC that it had falsified an investment contract with Multicoin Capital, AIC never would have entered a contract with Spume.

14. On or about June 5 and 6, 2022, respectively, AIC and Spume (together, the "Parties") executed an Advisory Agreement (the "Agreement") governing the scope of services to be tendered by AIC to Spume.

15. Section 2 of the Agreement governed the scope of AIC's services. It states, in part:

> **Our Services.** We agree to provide the following services for [Spume] on behalf of Spume.io
> . . .
> Expedited Onboarding with both Deltec Bank and Delchain for fiat and crypto banking services, waving [sic] of standard deposit requirements (4-6 week process)
>
> Once onboarding is completed, act as Advisor to [Spume's] token listings with targeted tier one exchanges
>
> Prepare company for a token exchange listing, providing assistance during application process (4-6 week process)

16. Section 3 of the Agreement states, "[Spume] agree[s] to cooperate fully with [AIC] in [its] performance of [its] services."

17. Section 6 of the Agreement states, "It is understood that AIC's involvement in the Transaction is strictly on a best efforts basis for consummation of any Transaction."

18. Section 7 of the Agreement sets forth the details of the consideration (the "Payment") to be paid by Spume to AIC. It states, in part:

> (a) Retainer Fee inclusive for all services – in the amount of One Million Four Hundred Fifty Thousand Dollars ($1,450,000) due at execution of this agreement, with Seven Hundred Fifth Thousand Dollars ($750,000) to be paid in USDT AND $700,000 paid in the company token.

19. Under the Agreement, AIC's entitlement to payment is unconditional and immediate.

20. Shortly after the Parties executed the Agreement, Spume transferred the entire Payment contemplated by Section 7 of the Agreement.

21. Following the Agreement's execution, AIC commenced efforts to enroll Spume with Delchain and Deltec.

22. AIC provided Spume with applications for Delchain and Deltec and requested that Spume return the completed application materials to AIC. AIC then submitted Spume's applications on Spume's behalf.

23. On review of Spume's application materials, Delchain and Deltec expressed concerns that Spume's representations regarding its non-fungible token trading volume were excessive.

24. Spume did not satisfy Delchain or Deltec's compliance requirements and, therefore, both institutions denied Spume's applications.

25. Additionally, AIC liaised with two tier one cryptocurrency exchanges, KuCoin and Huobi, on Spume's behalf.

26. Prior to the Agreement's execution, Spume applied to have its proprietary token listed on KuCoin and was denied.

27. Spume never disclosed this failed attempt to list with KuCoin to AIC.

28. If AIC had known of KuCoin's initial rejection of Spume, AIC would not have engaged with Spume according to the terms set forth in the Agreement.

29. Notwithstanding KuCoin's prior rejection of Spume, AIC successfully brokered an agreement in principle whereby KuCoin agreed to list Spume's proprietary token in exchange for a favorable listing fee.

30. KuCoin later withdrew this offer following a direct interaction with Spume's chief executive officer, Beauregard Moody ("Moody").

31. Moreover, AIC later learned that several of Spume's agents were corresponding directly with KuCoin during the term of the Agreement without AIC's knowledge or consent.

32. AIC also brokered an agreement whereby Huobi agreed to list Spume's proprietary token in exchange for a favorable listing fee.

33. Huobi reduced its listing fee by more than half in reliance on the fraudulent Multicoin Investment.

34. After Huobi approved Spume's application and before it listed Spume's proprietary token, Spume stole $700,000 worth of said token from AIC by cancelling the smart contract that gave the tokens their value.

35. Spume's cancellation of the smart contract similarly affected other holders of the Spume token.

36. In response to AIC's efforts to resolve the issue of Spume's partial cancellation of the Payment, Spume's Chief Operating Officer Edvardo Bissiccio issued a threat to AIC stating, "I fix problems I hope you don't become a problem."

37. Upon information and belief, Spume began harassing employees of AIC on social media platforms, including continued contact with AIC's CEO after the filing of the Complaint and knowledge that AIC was represented by counsel.

38. Additionally, Spume commenced a campaign to harm AIC's reputation in the digital currency business community.

39. In a series of September 17, 2022, messages on the Telegram messenger application, Moody detailed his plans to publish "exposé[s]" concerning "each individual and company involved with performing wrongdoing against Spume in terms of over promising, breaking contract, and stealing funds for services that were never rendered[.]"  Excerpts attached as Exhibit A.

40. Moody stated that he would release these "exposé[s]" "on coin-desk and coin telegraph as well as other publications." *Id.*

41. Moody concluded by stating, "You want a fight, then let's fight. I'm coming for it all. Money will be the smallest win for me. I'm coming for your freedom." *Id.*

42. Additionally, in an undated message from Moody to a 14-member Telegram group including Huobi's listing agent entitled "HUOBI x SPUME 08/29/2022," Moody knowingly and falsely stated in reference to AIC, "They have been misleading projects as well as marketing and selling exchange listings on not only Huobi's behalf but for many other exchanges as well." *See* Exhibit B – Undated Message to Huobi Listing Agent.

11

43. Finally, in a September 22, 2022, message to a Telegram group consisting of more than 15,000 members entitled "SPUME," Moody stated, in part and without making specific reference to AIC:

> The main point of the message is that there's basically a group that stole money from Spume and will say and do anything to make us seem like the bad guys.
> . . .
> This group of people and fraudulent companies are being sued and the proper authorities and legal institutions have already been notified.
> . . .
> Every single person that has caused pain or stole [sic] from our project will have to answer for their wrongdoings.
> . . .
> These people will answer very shortly and we look forward to bringing light on the situation publicly.
> . . .
> These people will answer to all of us for their intentional wrongdoings.
>
> Regardless, we're sorry that these cases of fraud and wrongdoing sometimes fall back on you all.

*See* Exhibit C – September 22, 2022 Moody Telegram Message.

44. After making the aforementioned statements and expressing his intention to publish "exposé[s]," upon information and belief, on October 6, 2022, The National Era published an article regarding Spume and AIC. *See* Exhibit D – October 6, 2022 National Era Article.

45. The article, entitled "Uncover Crypto Fraud on Spume.IO vs. Atlantic International Capital LLC" (the "Article") and authored by "The National Era Staff," details Spume's relationship with AIC and Spume's initiation of the above-captioned matter. *Id.*

46. The Article repeatedly and falsely characterizes AIC's actions as fraudulent. For example, it states, "This deliberate fraud practice from AIC only proves that while cryptocurrency has been raking in billions in the past year, there's still lots of work to do in terms of security in the space." *Id.*

47. Following this series of messages and the Article's publication, several of AIC's industry peers reached out directly to AIC about the accusations leveled at AIC.

48. Spume's multiple false statements about AIC to AIC's business contacts, investors, and the public have caused reputational injuries and harm to AIC.

## COUNT I – BREACH OF CONTRACT

49. AIC repeats and realleges the allegations of Paragraphs 1 through 48 as if fully set forth herein.

50. The Advisory Agreement constitutes a valid contract between AIC and Spume.

51. Pursuant to the Agreement, Spume had a duty to compensate AIC for its services by tendering at the Agreement's execution (i) $750,000 to be paid in USDT and (ii) $700,000 to be paid in Spume's proprietary token.

52. The Agreement did not entitle Spume to unilaterally take back any portion of the consideration at any time or for any reason.

53. Pursuant to the Agreement, Spume had a duty to cooperate fully with AIC in the performance of its services.

54. Spume breached Section 3 of the Agreement by failing to cooperate fully with AIC.

55. Spume's failures to cooperate include, but are not limited to:

   a. Spume's failure to disclose to AIC that KuCoin rejected Spume to list its token on the KuCoin exchange prior to executing the Agreement with AIC; and

   b. Spume's direct correspondences with KuCoin, which caused KuCoin to abandon the deal that AIC brokered to have Spume's proprietary token listed on the KuCoin exchange.

   c. Spume's failure to disclose that it had created a fraudulent agreement with Multicoin Capital, falsely showing that Multicoin Capital had invested $2.5 million with Spume.

56. Spume breached Section 7 of the Agreement by stealing $700,000 of its token from AIC.

57. As a result of Spume's breaches, AIC has incurred $700,000 of damages.

58. In light of Spume's breaches, AIC is entitled to reimbursement equivalent to $700,000.

WHEREFORE, AIC respectfully requests that the Court enter judgment in AIC's favor against Spume on Count I of the Counterclaim awarding full payment to AIC of all consideration due under the Agreement and for such other and further relief as this Court deems just and appropriate.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

59. AIC repeats and realleges the allegations of Paragraphs 1 through 48 as if fully set forth herein.

60. Under Florida law, every contract contains an implied covenant of good faith and fair dealing.

61. The implied covenant of good faith and fair dealing prohibits a party to a contract from contravening the contracting parties' reasonable expectations in matters where the contract affords either party substantial discretion.

62. Under the Agreement, Spume had substantial discretion to act in its self-interest and in a manner detrimental to AIC.

63. By stealing $700,000 in the Spume token from AIC, Spume breached Section 3 of the Agreement and subverted the Parties' expectation that payment was an unconditional prerequisite to AIC's performance.

64. By failing to disclose its rejection by KuCoin prior to the Agreement's execution, Spume breached Section 3 of the Agreement and subverted the Parties' expectation that the Agreement would rely on the good faith disclosure of any and all pertinent information regarding Spume's independent efforts to list its token on a tier one exchange.

65. By communicating directly with KuCoin without AIC's knowledge or consent, Spume breached Section 3 of the Agreement and subverted the Parties' expectation that AIC would serve as Spume's global services agent and advisor.

66. As a result of Spume's breaches of the implied covenant of good faith and fair dealing, AIC has incurred significant damages including, but not limited to, lost profits and reputational harm.

WHEREFORE, AIC respectfully requests that the Court enter judgment in AIC's favor against Spume on Count II of the Counterclaim awarding full payment to AIC of all consideration due under the Agreement and for such other and further relief as this Court deems just and appropriate.

## COUNT III – DEFAMATION PER SE

67. AIC repeats and realleges the allegations of Paragraphs 1 through 48 as if fully set forth herein.

68. Spume published a series of false statements about AIC including, but not limited to:

      a.  Moody's September 17, 2022, messages wherein he falsely stated that AIC stole from him in connection with a "fraudulent deal";

      b.  Moody's message to Huobi wherein he falsely stated that AIC had "been misleading projects as well as marketing and selling exchange listing on not only Huobi's behalf but for many other exchanges as well"; and

69.    Spume published each of the aforementioned statements to third parties.

70.    These statements have damaged AIC's ability to conduct business, have deterred third parties from conducting business with AIC, falsely assail AIC's management, and falsely impugns AIC's method of doing business. As such, Spume's statements are defamatory per se.

71.    Where a party's statements are defamatory per se, damages are presumed.

72.    As a direct result of Spume's defamatory statements, AIC has experienced reputational harm and lost business opportunities.

73.    In light of Spume's defamatory statements, AIC is entitled to general and punitive damages.

WHEREFORE, AIC respectfully requests that the Court enter judgment in AIC's favor against Spume on Count III of the Counterclaim awarding payment to AIC in an amount to be determined at trial including, but not limited to, punitive damage and for such other and further relief as this Court deems just and appropriate.

### COUNT IV – TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

74.    AIC repeats and realleges the allegations of Paragraphs 1 through 48 as if fully set forth herein.

75.    At all times relevant to the Agreement, AIC maintained protected business relationships with Huobi and KuCoin.

76. Spume became aware of AIC's relationship with Huobi and KuCoin through its dealings with AIC under the Agreement.

77. Spume intentionally and unjustifiably interfered with AIC's relationship with Huobi by stating to Huobi's listing agent that AIC was "misleading projects as well as marketing and selling exchange listings on not only Huobi's behalf but for many other exchanges as well."

78. Spume intentionally and unjustifiably interfered with AIC's relationship with KuCoin by failing to inform AIC that Spume had previously tried and failed to list the Spume token on KuCoin.

79. By dealing with KuCoin on Spume's behalf without the knowledge of KuCoin's earlier rejection of Spume, AIC appeared to be representing a substandard cryptocurrency project, thus harming AIC's reputation as an advisor and agent.

80. As a result of Spume's interference, AIC has experienced reputational harm and impaired standing in its community.

WHEREFORE, AIC respectfully requests that this Court enter judgment in AIC's favor against Spume on Count IV of the Counterclaim awarding payment to AIC in an amount to be determined at trial and for such other and further relief as this Court deems just and appropriate.

## **COUNT V - CONVERSION**

81. AIC repeats and realleges the allegations of Paragraphs 1 through 48 as if fully set forth herein.

82. AIC lawfully possessed $700,000 in the Spume token.

83. Spume wrongfully asserted dominion over the $700,000 in Spume tokens in AIC's possession by cancelling the smart contract that gave the Spume tokens their value.

84. Spume's cancellation of the smart contract deprived AIC of its right to possess the $700,000 in value associated with the Spume tokens.

85. Spume exercised malice and a reckless disregard for AIC's rights in converting the $700,000 in Spume tokens.

86. As a result of Spume's conversion, AIC incurred a $700,000 loss and is entitled to the same in damages.

WHEREFORE, AIC respectfully requests that the Court enter judgment in AIC's favor and against Spume on Count V of the Counterclaim awarding payment to AIC in an amount to be determined at trial including, but not limited to, punitive damages and grant such other and further relief as this Court deems just and appropriate.

DATED: November 4, 2022            Respectfully submitted,

                                                      NELSON MULLINS BROAD & CASSEL

By:   */s/Daniel Newman*
       Daniel Newman
       Federal Bar No. 962767
       dan.newman@nelsonmullins.com
       2 South Biscayne Blvd., 21st Floor
       Miami, FL 33131
       Phone: (305) 373-9400
       Fax: (305) 373-9443

*Attorneys for Defendant and Counter-Plaintiff Atlantic International Capital, LLC*

## CERTIFICATE OF SERVICE

      I, Daniel Newman, hereby certify that on November 4, 2022, the foregoing document, filed through ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those indicated as non-registered participants on this date.

                                      */s/ Daniel Newman*
                                      Daniel Newman