# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Spume.IO LTD, <br><br> Plaintiff <br><br> v. <br><br> Atlantic International Capital LLC, d/b/a AIC Digital Assets Group, <br><br> Defendant. | CASE NO. 9:22-cv-81534 |

### ORDER ESTABLISHING THE PROTOCOL FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION

Pursuant to the agreement reached between Plaintiff and Defendant herein, this Court adopts and orders the following Protocol relating to the Production of Documents and Electronically Stored Information ("ESI") in the above-captioned Action, which binds all parties and their counsel of record in this Action (the "Parties").

**I.      SCOPE**

The procedures and protocols outlined herein govern the production of documents and ESI by all Parties. The Parties will take reasonable steps to comply with this agreed-upon protocol for the Production of Documents and Electronically Stored Information ("Protocol"). All Productions made pursuant to this Protocol are subject to any protective order entered in this Action. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or Requesting Party. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, Local Rules, or applicable state and federal statutes, they shall be controlling. Nothing in this stipulation is intended to alter the parties' rights, obligations, or responsibilities under Federal Rules of Civil Procedure 26(b)(2)(B),

34(a)(1), and 37. No provision of this ESI Protocol waives any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI. The discovery requests, objections thereto, agreements, and any pertinent Court orders shall govern the scope of Documents and ESI to be produced.

      A.      <u>Limitations and Non-Waiver</u>

The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege arising under the laws of any jurisdiction, including the attorney-client privilege and the work- product doctrine. All Parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections, including but not limited to the attorney-client privilege and the work-product doctrine. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents and ESI are preserved and may be asserted at any time.

      B.      <u>Modifications by Agreement</u>

Any practice or procedure set forth herein may be modified by agreement of affected Parties, provided that modification has been confirmed in a writing signed by all affected Parties or their respective counsel of record. Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from the Protocol must obtain leave of Court to do so unless all affected Parties otherwise consent in a writing signed by all affected Parties or their respective counsel of record.

      C.      <u>Modification by Court Order</u>

Nothing in this Protocol shall be construed as a waiver of the right of any Party to apply to

the Court for an Order modifying its terms for good cause shown, provided, however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the affected Parties shall use reasonable best efforts to negotiate an exception from or modification to this Agreement and Order prior to seeking relief from the Court.

**II.     DEFINITIONS**

1. "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

2. "Custodian" shall mean any individual of a Producing Party having possession, custody, or control of potentially relevant information, Documents, or ESI.

3. "Document" and "Electronically Stored Information" ("ESI") shall have the same meaning as the usage of these terms in Federal Rule of Civil Procedure 34(a)(l)(A).

4. "Email" refers to electronic means for sending, receiving, and managing communications via different structured data applications (email client software), including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, or Lotus Notes, and the files created or received by such means, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to collect such ESI.

5. "Instant Messages" means communications involving immediate correspondence between two or more users sent via chat client or short message service (SMS), including but not limited to, Telegram, WhatsApp, Bloomberg Chat, Google Talk, Yahoo! Messenger, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Line, Audium, Trillian, SnapChat or any instant messaging system, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to preserve or collect such ESI.

6. "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual documents, including extracted and user-created Metadata, as well as OCR or Extracted Text, should such data be available.

7. "Media" means an object or device, including but not limited to, a disc, tape, computer, or other device, on which data is or was stored.

8. "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other

technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

9. "Native File(s)/Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

10. "OCR" means optical character recognition technology that is capable of reading text-based paper documents or electronic images of documents and making such documents searchable using appropriate software.

11. "Producing Party" means any Party or third-Party in the Action that produces documents or ESI.

12. "Search Term(s)" means a word or combination of words and phrases designed to capture potentially relevant ESI within agreed upon date limitations, if any, and includes strings of words and phrases joined by proximity and Boolean connectors.

13. "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

14. Reservation of Rights: For the avoidance of doubt, the inclusion of any platform, program, application, or software in the preceding paragraphs is merely by way of example and does not create any independent obligation or commitment to preserve or collect ESI from such platform, program, application, or software. The Parties reserve all rights to object to any demand to collect or produce ESI from any or all of the examples listed above.

**III.  IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI**

Prior to conducting searches for responsive Documents and ESI, the Parties shall meet and confer in good faith to reach an agreement on methods to be used to search for or otherwise identify responsive Documents and ESI. This discussion may include, as necessary, identifying custodians, custodial and non-custodial sources of Documents, date ranges, file types, or any other proposed method (e.g., Search Terms). Nothing in this section is meant to suggest that use of any particular methodology or Search Terms relieves parties of obligations to produce responsive documents under the Federal Rules of Civil Procedure. Further, nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a Court ruling to modify previously

agreed-upon Search Terms or other search parameters at any time prior to the completion of discovery. The Parties will not seek Court intervention with respect to means for identifying potentially responsive documents without first attempting to resolve any disagreements in good faith via a meet and confer, based upon all reasonably available information.

**IV.    METHOD OF PRODUCTION OF DOCUMENTS**

Producing Party shall, to the extent reasonably and technically possible, produce Documents and ESI according to the specifications provided in Appendix A.

**V.    PRODUCTION FORMAT FOR DOCUMENTS ORIGINATING AS PAPER**

The following production specifications apply to documents that existed in paper format prior to production (*i.e.*, "hard copy documents"). The Parties agree that as a default practice, documents will generally be scanned and produced electronically in an appropriately formatted file (including OCR) that ensures its accessibility. The Parties agree to generally produce hard copy documents in the formats described below, to the extent reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. If a Producing Party intends to produce any hard copy documents in any manner other than as specified herein, the Producing Party shall notify the Requesting Party of its intent, including production format *(e.g.,* produced as paper, made available for inspection). If the proposed production format is not acceptable to the Requesting Party, the Parties shall meet and confer to determine a mutually acceptable production format for such documents.

   A.    <u>TIFFs</u>

Documents should be produced as single-page, colored, group IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF

image files should be provided in an "Images" folder.

### B. Unitization

Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. The Parties will undertake reasonable efforts to, or have their vendors undertake reasonable efforts to, logically unitize documents correctly, and will meet and confer regarding improperly unitized documents.

### C. Parent-Child Relationships

The Parties agree that if any part of a document or its attachments is responsive, the entire document and attachments will be produced, except any attachments that must be withheld or redacted on the basis of any protection or privilege. Any attachments withheld or redacted will be logged in accordance with any agreement reached on the format of privilege logs. With respect to ESI, the Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that such child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BeginBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

D. <u>OCR</u>

To the extent that documents that exist in paper or hard copy format have been run through optical character recognition ("OCR") software, the full text shall be provided on a page-level basis in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions. Nothing in this Protocol shall create an obligation to correct, supplement, or manually generate text that fails to render through reasonable OCR processes.

E. <u>Unique IDs</u>

Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in the Action.

F. <u>Load Files</u>

Documents should be produced in accordance with the specifications in Appendix A.

G. <u>Metadata</u>

Each of the Metadata and coding fields set forth in Appendix A shall be produced for each document where available.

## VI. PRODUCTION FORMAT FOR UNSTRUCTURED ELECTRONICALLY STORED INFORMATION

The Parties agree to produce in the formats described below.

### A. TIFFS

Documents should be produced as single-page, colored, group IV TIFFs imaged at 300 dpi. The document's original orientation should be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape) to the extent reasonably and technically possible. Where documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments and other rich data as displayed in the document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible. Bates numbers, confidentiality designations and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

### B. Chat Data

ESI that is chat or Instant Message data may be produced in TIFF image format, along with an image load file and metadata load file, containing the following fields where available:

1. RoomID /PCHAT Number/ INTMSGID;
2. Conversation start date and time;
3. Conversation end date and time;
4. Invites;
5. Participants Entered;
6. Participants Left;
7. History Users;
8. Chat Posters;
9. Duration of chat;
10. Participant Count/ Number of Participants; and

11. Audit.txt

If such chat or Instant Message data poses problems of accessibility, readability or use in TIFF form, or if the chat data that existed at the time this Action was filed was not maintained in an accessible format at the time of filing, the Parties shall meet and confer to determine the best ESI production format, including potentially producing chat files in native format.

C.  Unique IDs

Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Bates 000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in this Action.

D.  Parent-Child Relationships

The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege or work-product protection. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BeginBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

E.  Metadata

The Parties agree that Metadata will be produced for all ESI, whether produced in Native Format or Static Image formats. Appendix A sets forth the minimum metadata fields that must be produced to the extent that metadata exists for a particular document.  A Party has no obligation to manually populate metadata fields.

F.  Native Files

1.  The processed native file for all spreadsheets (*i.e.*, MS Excel, .CSV, or similar), database files (*i.e.*, MS Access), presentation files (*i.e.*, PowerPoint), and electronic information containing audio or video components should be produced and linked to the database by the metadata field "NativeLink." These documents should be produced in native format where available. For documents that require redactions or other exceptional treatment, the documents may be produced in TIFF image form, as long as they remain readable and accessible including all hidden information (*e.g.*, redlines) or may be produced with redactions applied directly to the native file.

2.  To the extent that a native spreadsheet must be redacted, the Producing Party may redact either the native file or produce TIFF images with burned in redactions in lieu of a Native File and TIFF placeholder image. If redacting TIFF images and to the extent that any of the following can be automated, the Producing Party, or its e-discovery vendor, should make reasonable efforts to: (1) reveal hidden rows, columns, or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths so that numbers do not appear as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; and (7) process spreadsheets so that they print

across, then down. If good cause exists, the requesting party may ask the Producing Party to manually undertake the foregoing for certain documents identified by Bates number by the requesting party to the extent the document was originally produced with concealed information. The Producing Party shall not unreasonably deny such a request.

3. For Bates-numbered productions only, an endorsed slip sheet should be provided with the native file to enable linking to that file within a database. The name of the native file should match the Begin Bates number of the slipsheet. The slipsheet should also contain "Document Produced Natively" in the center of page, along with the original file name of that native file.

4. Other than as specifically set forth herein, a Producing Party need not produce documents in Native Format. If good cause exists for the requesting party to request production of certain documents in Native Format, the requesting party may request production in Native Format by providing (1) a list of the Bates numbers of documents it requests to be produced in Native Format; and (2) an explanation of the need for reviewing such documents in Native Format. The Producing Party shall not unreasonably deny such requests. The Parties shall meet and confer in good faith regarding any disagreement about a request for production of a document in Native Format. The Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each Native File in such production, and all Extracted Text and applicable metadata fields.

G. Track Changes and Comments

To the extent that a document or ESI not previously processed contains tracked changes or comments, the document or ESI should be imaged showing tracked changes and comments to the

extent it is not unduly burdensome to do so.

  H.  <u>Password Protected Files</u>

The Parties will make reasonable efforts to ensure that all encrypted or password-protected documents and ESI are successfully processed for review and production. To the extent encrypted or password-protected documents are successfully processed, the Parties have no duty to identify further the prior encrypted status of such documents. To the extent such Documents are not successfully processed despite use of reasonable efforts, including reasonable efforts to obtain passwords, a placeholder TIFF image and any available metadata may be produced in place of each such Document indicating that security protection could not be removed. On request from the Receiving Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection.

  I.  <u>Embedded Documents</u>

Embedded files in responsive documents shall be extracted during processing and produced as separate documents, with the exception of PNG files or GIF files extracted from signature lines. The Bates number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A.

  J.  <u>Deduplication</u>

A Producing Party shall globally deduplicate by exact duplicate families provided that (i) only exact (bit-by-bit) duplicates are subject to deduplication; (ii) the Producing Party identifies the additional custodians in an All Custodian metadata field; (iii) an Email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical, and (iv) notwithstanding anything to the contrary herein, a Producing Party shall produce

all attachments regardless of their duplicate status from all emails produced. Further, the Parties shall meet and confer in good faith concerning deduplication beyond exact duplicates. If the requesting party objects to any deduplication methodology proposed by a Producing Party, it shall timely raise those concerns with the Producing Party.

      K.      <u>Production of Audio and Video Recordings</u>

If audio and/or video recordings are responsive, the Parties should meet and confer to determine a mutually agreeable format for producing the audio and/or video recording and/or, to the extent a Producing Party objects to producing responsive audio and video recordings on grounds of undue burden, regarding the basis for the claim of undue burden. Additionally, the call information (metadata) related to each audio recording must be produced and must include, at a minimum where available, the following fields:

    1.    CALLER NAME or CALLER ID: Caller's name or identification number.

    2.    CALLING NUMBER: Caller's phone number.

    3.    FILENAME: Filename of audio file.

    4.    DATE: Date of call.

    5.    TIME: Time of call.

    6.    CALLED PARTY: Name of the party called.

    7.    CALLED NUMBER: Called party's phone number.

The filename is used to link the metadata to the produced audio file. The file name in the metadata and the file name used to identify the corresponding audio file must match exactly. The metadata file must be produced in delimited text format. Field names must be included in the first row of the text file.

L.   Custodian or Originating source

The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, etc.) should be produced in such a fashion as to identify the department, group, entity, or facility, when reasonably available. A Producing Party shall use a uniform description of a particular custodian across productions.

M.   Date Format

1. Dates and times shall be reported in separate fields, with formats of MM/DD/YYYY and HH:MM:SS respectively.

2. Date delimiters, such as slashes and colons, must be consistent across all fields. In the format of MM/DD/YYYY, there are no spaces and only forward slashes.

3. Date formats must be consistent within any one field.

4. Date formats must be consistent across all fields, *i.e.,* a record with a sent date should have the same format in the last modified date field.

5. To the extent reasonably practicable, each Producing Party shall process its ESI within a uniform time zone: *i.e.*, Greenwich Mean Time "GMT," Eastern Standard Time "EST." To the extent a Producing Party cannot process ESI with that uniform time zone, it shall disclose the same and the Parties shall meet and confer regarding a reasonable alternative, such as providing the applicable time zone. However, a Producing Party shall have no obligation to reformat or otherwise modify date or time data in ESI (*e.g*., spreadsheets, databases or audio files).

N.   Production Media

The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via CD, DVD, flash drive, or hard drive. To the extent possible, physical media should be protected before it is produced.

      O.     <u>Replacement Productions</u>

Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BeginBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

      P.     <u>Encrypted Data</u>

To the extent a production is encrypted before it is produced, the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data.

## VII. ASSERTIONS OF PRIVILEGE

Privilege Logs shall be provided in a form consistent with Federal Rules of Civil Procedure 26(b)(5)(A).

## VIII. AUTHENTICATION

The Parties will meet and confer regarding an authentication stipulation concerning documents and ESI produced in this Action.

## APPENDIX A

Format for both Plaintiff and Defendant productions:

**OCR and Extracted Text Files** (**.TXT Files**):

- Single text file per document containing all the document's pages

- Filenames should be of the form:

    <Bates num>.txt

    Where <Bates num> is the BATES number of the first page in the document.

- Text must be encoded in UTF-8.

**Images Files:**

- Single page per image

- Single image per file

- TIFF is default FORMAT unless the following formats are agreed to: jpeg, jpeg2000, giff, png, single image tiff, and bmp

- Filenames should be of the form:

    <Bates num>.<ext>

    Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc)

**Index Files:**

- DAT files (separated by standard Concordance delimiters)

- First line must contain the column/field names

- Every row must have the same number of columns/fields (empty values are acceptable)

- Include relative pathing to each TXT File, Image File, or Native File.

- Text must be encoded in UTF-8

- Values must be enclosed by Concordance standard delimiters

**Specifications for the production of e-mail and attachments:**

- The preferred method of receiving emails and their attachments is for them to be in consecutive order (parent email followed by corresponding attachments).

- If emails and their attachments are produced as TIFF images with Text files, the Index File should contain the metadata fields listed in Paragraph 7, to the extent that they exist for a given document.

- If emails are being produced as native MSG files with attachments embedded, then provide extracted text in a single text file which contains the extracted text for both the parent e-mail and the attachment. Use a delimiter to set off the parent e-mail from the attachment. Pair the extracted combined text file with the MSG file.

- For emails, metadata is to include, but is not limited to: To, From, CC, BCC, Date Sent, Date Received, Subject, and any available information for the fields listed below in Paragraph 7.

**Specifications for the production of native files, including, but not limited to, spreadsheet and audio or video files, e.g., Excel, MP3, AVI, etc.:**

- Produce the native file, the corresponding extracted text, and the metadata.

- Metadata is to include, but is not limited to, Create Date, Last Edit Date, Author, and any available information for the fields listed below in Paragraph 7.

- For Bates-numbered productions only, a slip sheet should be provided with the native file to enable linking to that file within a database. The name of the native file should match the Begin Bates number of the slipsheet. The slipsheet should also contain "Document Produced Natively" in the center of page, the Confidentiality branding, if any, in the bottom left corner of the page, and the Begin Bates number of the document in the bottom right corner of the pagealong with the original file name of that native file.

**The standard metadata fields that are to be produced include, but are not limited to, the following (where available):**

- Begin Bates
- End Bates
- BegAttach (Begin Attachment Bates #)
- EndAttach (End Attachment Bates #)
- Author (Creator of document)
- LastAuthor
- To (Email To)
- From (Email From)
- BCC (Email BCC)
- CC (Email CC)
- Custodian
- All Custodians
- DateCRTD (Creation date; mm/dd/yyyy)
- DateLastMod (Date Last Modified; mm/dd/yyyy)
- DateRCVD (Date Received; mm/dd/yyyy)
- DateSent (mm/dd/yyyy)
- DocExt (Document Extension/File Type/Native Type/File Extension)
- FolderPath (Relative Path/File Path)
- E-mail Subject (Subject line of e-mail)
- Filename (Original file name)
- ParentID
- Title (Title provided by user within the document)
- MD5 Hash Value

- Page Count

- Attachment Count

- Doc Type (Type of document, such as "Microsoft Excel Spreadsheet" or "Outlook E-mail," etc.)

- Redacted (Y/N)

- Confidentiality (Y/N)

- Source (Name of Person or Entity who provided data)